IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KIRSTEN TYRREL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MASKCARA INDUSTRIES, INC., a Utah Corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS AND ALTERNATIVE MOTION TO STAY AND COMPEL ARBITRATION**<br><br>Case No. 4:19-cv-00089-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

Defendant Maskcara Industries, Inc. ("Maskcara"), has filed a motion to dismiss ("Motion")[1] on the basis of a forum-selection provision in the parties' contract, or alternatively to stay the proceedings here while the parties pursue arbitration required under another clause in the contract. Plaintiff Kirsten Tyrrel ("Tyrrel") disputes Maskcara's interpretation of the forum-selection provision and argues that the arbitration provision cannot be invoked due to an unsatisfied condition precedent — or has been waived. As explained below, the Motion is DENIED. The action will not be dismissed or stayed for arbitration.

---

[1] Motion to Dismiss or, in the Alternative, to Stay and Compel Arbitration Under the Federal Arbitration Act, docket no. 8, filed November 20, 2019; Memorandum in Opposition to Motion to Dismiss or, in the Alternative, to Stay and Compel Arbitration Under the Federal Arbitration Act ("Opposition"), docket no. 11, filed December 4, 2019; Declaration of Jessica P. Wilde ("Wilde Declaration"), docket no. 12, filed December 4, 2019; Reply Memorandum in Support of the Motion to Dismiss or, in the Alternative, to Stay and Compel Arbitration Under the Federal Arbitration Act ("Reply"), docket no. 14, filed December 20, 2019; Declaration of DJ Poyfair ("Poyfair Declaration"), docket no. 14-1, filed December 20, 2019; Declaration of Nick Killpack ("Killpack Declaration"), docket no. 14-2, filed December 20, 2019. Oral argument is determined to be unnecessary, and the matter will be decided under DUCivR 7-1(f) based on the parties' written submissions.

BACKGROUND ..........................................................................................................................2
DISCUSSION ...........................................................................................................................7
    I.        The Motion to Dismiss is Denied ...........................................................................7
    II.       The Motion to Stay Pending Arbitration is Denied ...............................................11
ORDER....................................................................................................................................14

## BACKGROUND

Except as noted, the following facts are undisputed:

1. Maskcara is a company based in St. George, Utah.[2] According to the Complaint, "Maskcara is a 'network marketing' or multi-level marketing company that markets a variety of beauty products, including eye, facial, and skin products."[3] Tyrell alleges that she was a successful distributor for Maskcara,[4] but that Maskcara has wrongfully suspended her and denied her commissions based on false pretenses.[5]

2. Tyrrel concedes that "Maskcara's Policies and Procedures [i.e., the Agreement] and Maskcara's Compensation Plan, together with any application she may have signed when she joined Maskcara, constitute a contract between the parties."[6]

3. Under the Agreement, Tyrrel agreed that "[j]urisdiction and venue of any matter not subject to arbitration shall reside exclusively in Washington County, State of Utah."[7]

4. Under the Agreement, Tyrrel also agreed that any dispute with Maskcara arising

---

[2] Motion, *supra* note 1, ¶1; Opposition, *supra* note 1, at 3.

[3] Complaint, ¶6, docket no. 2, filed October 30, 2019.

[4] *Id*. ¶32,

[5] *Id*. ¶¶71-76.

[6] Motion, *supra* note 1, ¶1 (quoting Complaint, *supra* note 3, ¶126, and citing Motion, Exhibit A ("Agreement"), docket no. 8-1, filed November 20, 2019); Opposition, *supra* note 1, at 3.

[7] Motion, *supra* note 1, ¶3 (quoting Agreement, *supra* note 6, at MB00008); Opposition, *supra* note 1, at 3.

from or related to the Agreement would be resolved through mandatory mediation and arbitration:

> Dispute Resolution. For claims seeking $10,000.00 or more that arise from or relate to the Agreement, prior to filing as set forth below, the parties shall meet in good faith and attempt to resolve such dispute through confidential non-binding mediation. One individual who is mutually acceptable to the parties shall be appointed as mediator. If the Parties cannot agree on a mediator, the complaining party shall request a mediator be appointed by the American Arbitration Association ("AAA"). The mediation shall occur within 60 days from the date on which the mediator is appointed. . . . . Mediation shall be held in Utah and shall last no more than two business days.
>
> Except as otherwise provided in the Agreement, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled through confidential arbitration. The Parties waive rights to trial by jury or to any court. This arbitration provision applies to claims that were not successfully resolved through the foregoing mediation process . . . . The arbitration shall be filed with, and administered by, the American Arbitration Association in accordance with the AAA's Commercial Arbitration Rules and Mediation Procedures . . . . The Federal Arbitration Act shall govern all matters relating to arbitration. The law of the State of Utah, without regard to principles of conflicts of laws, shall govern all other matters relating to or arising from the Agreement.[8]

5. In this action, Tyrrel asserts the following claims against Maskcara: Intentional Interference with Existing and Potential Economic Relations; Breach of Contract; Breach of Covenant of Good Faith and Fair Dealing; and Injunctive Relief.[9]

6. All of Tyrrel's claims against Maskcara arise out of or relate to the Agreement.[10]

---

[8] Motion, *supra* note 1, ¶4 (quoting Agreement, *supra* note 6, at MB00007). In response to this fact paragraph, Tyrrel acknowledges that "Maskcara has correctly cited to the [Agreement], but Plaintiff qualifies the introductory sentence by stating that the requirement to resolve disputes through arbitration is conditioned upon a mediation that would take place within 60 days after a mediator is appointed by AAA. Further, Maskcara's right to arbitration under the Policies and Procedures can be waived, as argued below." Opposition, *supra* note 1, at 3 (citation omitted). This fact paragraph is undisputed.

[9] Motion, *supra* note 1, ¶5 (citing Complaint, *supra* note 3); Opposition, *supra* note 1, at 3.

[10] Motion, *supra* note 1, ¶6 (citing and quoting Complaint, *supra* note 3, ¶¶120 ("Moreover, Maskcara's stonewalling and delaying in meeting its obligations under the Dispute Resolution procedures in the Policies and Procedures are contrary to industry standards, constitute a violation of Maskcara's common law duty of good faith and fair dealing and amount to an intentional breach of Maskcara's agreement with [Tyrrel]."); 126 ("Maskcara's Policies and Procedures and Maskcara's Compensation Plan, together with any application she may have signed

7.	In early June 2019, Tyrrel received a letter dated May 31, 2019, informing her that she was suspended from her Maskcara business.[11] Within a few weeks, on June 19, 2019, Tyrrel sent a letter formally demanding a mediation under the Agreement (and proposing Brent Manning or Mark James as potential mediators).[12]

8.	The parties dispute whether Maskcara "meaningfully engage[d]" with Tyrrel, or had reasonable time to do so, in the mediator selection process prior to June 28, 2019, when Tyrrel initiated a mediation through AAA.[13]

9.	Maskcara did not meet AAA's deadline to submit Maskcara's preference for mediators, to the AAA Case Administrator.[14]

---

when she joined Makscara, constitute a contract between the parties (the 'Contract')."), 136 ("In addition to the express terms of the Contract, the Contract contains an implied covenant of good faith and fair dealing such that the parties promised not to do anything to injure the other party's right to receive the benefit of the Contract."), 147-149 (requesting injunctive relief to reinstate Tyrrel under the Agreement)). In response to this fact paragraph, Tyrrel states that her "claim for intentional interference with existing and potential economic relations does not arise out of the parties' agreement, but it most likely relates to the parties' agreement." Opposition, *supra* note 1, at 3. This fact paragraph is undisputed.

[11] Opposition, *supra* note 1, ¶5; Reply, *supra* note 1, at 2.

[12] Opposition, *supra* note 1, ¶6; Wilde Declaration, *supra* note 1, Exhibit A at 3; Reply, *supra* note 1, at 2.

[13] Opposition, *supra* note 1, ¶¶7-8; Reply, *supra* note 1, at 3. Maskcara does not deny the facts set forth in the declaration of Tyrrel's counsel (Ms. Wilde) regarding what transpired during this period, including its failure to respond to certain emails regarding, among other things, moving forward with mediation. Wilde Declaration, *supra* note 1, ¶¶4-12. As Maskcara points out, however, "only nine days" passed between Tyrrel's initial letter demanding mediation on June 19, 2019, and her application for a mediator from AAA on June 28, 2019. Reply, *supra* note 1, at 3.

[14] Opposition, *supra* note 1, ¶9; Reply, *supra* note 1, at 3. Maskcara appears to take issue with this, *id*., but the underlying facts set forth in the Wilde Declaration, *supra* note 1, are undisputed. "On July 2, 2019, the Case Administrator for the mediation (assigned Case 01-19-0002-0361) emailed [Ms. Wilde] and [Mr. Poyfair] with a list of five potential mediators and to select the order of preference (numerical rankings of mediators based on preference) on or before July 9, 2019." *Id*., ¶13 & Exhibit G. The email stated that "[i]f the AAA does not receive your list on or before July 9, 2019, all names on the list will be deemed acceptable and the AAA may appoint a mediator . . . ." *Id*., Exhibit G at 2. Within 30 minutes of this email, Mr. Poyfair responded that his "family [was] on a scuba diving vacation in the Caribbean for the next 10 days or so," that he "ha[d] limited access to [his] cell," and that the parties would "need to pick this up when [he] return[ed]." *Id*., Exhibit H; Reply, *supra* note 1, at 3. Tyrrel "submitted her ranking list of mediators" on July 9, 2019. Wilde Declaration, *supra* note 1, ¶15 & Exhibit I. On July 15, 2019, AAA emailed Mr. Poyfair, saying that it had "not received [Maskcara's] mediator selections for this matter. Please submit by end of day today for them to be considered." *Id*., ¶17 & Exhibit J. About an hour later, Mr. Poyfair responded: "Sorry. As opposing counsel knows, our family is and has been out of the country until this Friday. We will respond by the following Monday, July 22." *Id*., ¶18 & Exhibit K. On July 16, 2017, Mr. Poyfair

10. AAA appointed James Holbrook as mediator on July 23, 2019. Both before and after that occurred, Maskcara indicated a willingness to engage Brent Manning as mediator (who was not on the AAA list of mediators provided by AAA and whom Maskcara had initially not agreed to use, although Tyrrel suggested him).[15]

11. The parties did not ultimately agree to a non-AAA mediator and Maskcara did not respond to a July 26, 2019 email in which Tyrrel's counsel asked when Maskcara would be available to mediate. The same email suggested that Maskcara had been "stonewall[ing]" Tyrrel's attempts "to schedule a mediation . . . ."[16]

12. Subsequently, Maskcara was unable to assure its participation in the pre-mediation scheduling conference set for August 14, 2019, which was reset for August 27, 2019. Maskcara then failed to provide available dates for a mediation at that scheduling conference, or

---

called and left [Ms. Wilde] a voicemail message. He said that Maskcara was willing to use Brent Manning as a mediator . . . ." *Id.*, ¶19. After "learn[ing] that [Mr. Manning] was available on August 12, 2019," Ms. Wilde emailed Mr. Poyfair on July 17, 2019, asking if that would work for Maskcara. *Id.*, ¶21 & Exhibit L. He replied, "Hope so. Clients are out of town. I'll ping you when we're in the US." *Id.*, ¶21 & Exhibit L. On July 22, 2019, "[h]aving not heard back from [Mr. Poyfair]," Ms. Wilde emailed AAA, stating that mediator selections were due "almost two weeks" earlier, and requesting that a mediator "be selected today . . . ." *Id.*, ¶¶22-23 & Exhibit M. Maskcara says that Ms. Wilde sent this email "[a]t 8:18 AM" on "the day Mr. Poyfair originally indicated he would be available to discuss potential dates for mediation." Reply, *supra* note 1, at 3. Maskcara's point here is not clear. While Maskcara appears to fault Ms. Wilde for requesting that AAA appoint a mediator on the morning of the day Mr. Poyfair had said he would respond regarding Maskcara's preference, Maskcara has not explained why Ms. Wilde's action should be viewed as improper. It was, after all, the day Mr. Poyfair had set for his own response. Thus, it appears Ms. Wilde was simply asking AAA to enforce the deadline Maskcara had given itself for responding with its mediator preference. Maskcara does not claim to have met that deadline, or to have been prevented from doing so.

[15] Opposition, *supra* note 1, ¶10; Reply, *supra* note 1, at 4. In her statement of facts, Tyrrel suggests that it was only after Mr. Holbrook's appointment that Maskcara indicated it was willing to engage Mr. Manning. *Id.* However, Tyrrel's own evidence shows that Maskcara did so as early as July 16, 2019. Wilde Declaration, *supra* note 1, ¶19.

[16] Opposition, *supra* note 1, ¶11. Maskcara emphasizes that this email was sent only nine days after Tyrrel first proposed a date for mediation, and after counsel had a phone conversation that Mr. Poyfair believed had resulted in the parties agreeing to Mr. Holbrook as a mediator. Reply, *supra* note 1, at 4.

5

until September 3, 2019 (which was six days past the August 28, 2019 deadline set by the mediator for doing so).[17]

13. A mediation was scheduled for October 22, 2019. This date is 91 days after the mediator was appointed by AAA. On October 18, 2019, Maskara's counsel emailed that his mother had just had a stroke the night before and that he would "need to be with her over the next few days"; that the scheduled mediation would therefore need to be "postpone[d]"; and that Maskcara would "like to reset as soon as possible."[18] When Tyrrel's counsel objected, saying that Tyrrel "would like to proceed with the mediation scheduled for [October 22, 2019]," Maskcara's counsel replied that Maskcara was "available for the mediation on November 4th and if that date doesn't work, we are willing to look at another that does."[19]

14. Following this exchange, Mr. Holbrook wrote counsel an email stating as follows:

Dear Counsel:

It appears to me that Maskcara has waived the mediation provision in its Policies and Procedures. The Dispute Resolution provision states in part: "The mediation shall occur within 60 days from the date on which the mediator is appointed." I was appointed as the mediator by the AAA on July 28, 2019, which means the mediation should have occurred on or before September 26, 2019. It appears that under the Parties' agreement, I no longer have authority to act as the mediator after September 26, 2019. It appears that Maskcara has waived a condition precedent to arbitration and, therefore, the mediation set for Tuesday, October 22, 2019, should be vacated. It appears Ms. Tyrrel now can proceed to file a Demand for Arbitration with the Association and proceed to arbitration.

Please give me your thoughts as soon as possible.

Jim Holbrook[20]

---

[17] Opposition, *supra* note 1, ¶12; Wilde Declaration, *supra* note 1, ¶¶28-39. Maskcara emphasizes its participation in the August 27, 2019 scheduling conference, the preparations it made for mediation, and the parties' agreement to an October 22, 2019 mediation. Reply, *supra* note 1, at 5; Poyfair Declaration, *supra* note 1, ¶¶11-13.

[18] Opposition, *supra* note 1, ¶13; Wilde Declaration, *supra* note 1, ¶¶40-42 & Exhibit BB; Reply, *supra* note 1, at 5.

[19] Wilde Declaration, *supra* note 1, ¶42 & Exhibit BB; Reply, *supra* note 1, at 5.

[20] Opposition, *supra* note 1, ¶14; Wilde Declaration, *supra* note 1, ¶¶44 & Exhibit CC; Reply, *supra* note 1, at 2.

15. In reply, Tyrrel "agree[d] that the Dispute Resolution provision ha[d] been waived and that the October 22nd mediation should be vacated."[21]

## DISCUSSION

### I. The Motion to Dismiss is Denied

Maskcara argues that this action should be dismissed on forum non conveniens grounds. "A valid forum-selection clause should be given controlling weight in all but the most exceptional cases."[22] "[W]hen venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory."[23]

Here, the forum selection provision provides: "[j]urisdiction and venue of any matter not subject to arbitration shall reside exclusively in Washington County, State of Utah."[24] Maskcara argues that this "clause is essentially identical to the clause at issue in [*Excell, Inc. v. Sterling Boiler & Mech., Inc.*,][25]—and both [the *Excell* and Agreement] clauses provide for a mandatory forum in state court."[26] The *Excell* court held that a provision stating that "[j]urisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado" was "mandatory and require[d] that any breach of contract action be brought and litigated in the

---

[21] Wilde Declaration, *supra* note 1, ¶45 & Exhibit DD.

[22] *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1091 (10th Cir. 2019) (citation and quotation marks omitted).

[23] *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 927 (10th Cir. 2005) (citation omitted).

[24] Agreement, *supra* note 6, at MB00008.

[25] 106 F.3d 318 (10th Cir. 1997).

[26] Motion, *supra* note 1, at 5.

District Court of El Paso County, Colorado."[27] The court rejected the argument that the provision would also extend to the "federal district court that sits in El Paso County," reasoning as follows:

> For federal court purposes, venue is not stated in terms of 'counties.' Rather, it is stated in terms of 'judicial districts.' *See* 28 U.S.C. § 1391. *Because the language of the clause refers only to a specific county and not to a specific judicial district, we conclude venue is intended to lie only in state district court.*[28]

As Tyrrel has emphasized, however, the provision here "does not specify whether venue lies in federal or state court," but "merely provides that venue shall be in Washington County."[29] Tyrrel asserts that "if a contract's forum-selection clause specifies a particular county, venue may be proper in both federal and state court."[30] Applying this rule here, Tyrrel concludes that "venue is proper because this case is assigned to the Southern Region of the Central District of Utah, and venue for Southern Region cases are within Washington County because there is a federal courthouse in St. George, Utah."[31] St. George is in Washington County. Tyrrel supports this argument by discussing some Tenth Circuit district court opinions and cases from other circuits.[32] In a footnote at the conclusion of this discussion, Tyrrel contrasts her preferred case law with *Excell* and argues that *Excell* is "flawed:"

> Several courts have rejected the rule applied in *Excell*. *See Cusano* [*v. General RV Center*, Case No. 2:18-cv-581], 2019 WL 575899 [(D. Utah Feb. 12, 2019)]; *Fed. Gasohol* [*Corp. v. Total Phone Mgt.*, Case No. 98–1176–WEB], 24 F. Supp.2d 1149, 1151 [(D. Kan. 1998)] (the District of Kansas did not follow the Tenth Circuit's *Excell* decision). Further, this 1997 Tenth Circuit case is distinguishable. The applicable forum-selection clause provided that venue "shall lie in the County of El Paso, Colorado." [*Excell*] stated that this venue provision only contemplated state court because "[f]or federal court purposes, venue is not stated in terms of

---

[27] 106 F.3d at 321.

[28] *Id.*

[29] Opposition, *supra* note 1, at 7.

[30] *Id*. (footnote omitted).

[31] *Id*. (footnote omitted).

[32] *Id*. at 7-10.

8

'counties.'" [106 F.3d] at 321. "Rather, it is stated in terms of 'judicial districts.'" *Id*. (citing 28 U.S.C. § 1391). "Because the language of the clause refers only to a specific county and not to a specific judicial district," [*Excell*]held that "venue is intended to lie only in state district court." *Id*.[33]

*Excell* held that any reference to "county" in a forum selection clause requires an action to be brought in state court. After *Excell* was decided, Tenth Circuit analysis of forum selection provisions has distinguished between language of *sovereignty* and language of *geography*. In *American Soda*, decided eight years after *Excell,* the court explained: "If the contract language refers to the state courts to the exclusion of the federal courts, it is a term of sovereignty. If, on the other hand, it encompasses [a particular state's] state courts and the federal court sitting in the [particular state], it is a term of geography."[34]

The provision at issue in *American Soda* required that disputes be resolved in "courts *of* the State of Colorado,"[35] which the court said "refer[red] to sovereignty rather than geography."[36] Courts *of* the State of Colorado are Colorado State Courts, so *American Soda* affirmed the district court's order remanding the case to Colorado State Court.

*American Soda* contrasted the provision it considered with the provision at issue in *Basicomputer Corp. v. Scott.*[37] *Basicomputer Corp.* held "that a forum selection clause requiring disputes to be brought '*in* courts in the State of Ohio' did not exclude the federal district court for the Northern District of Ohio, which . . . was unquestionably *in* Ohio[.]"[38] Under *American*

---

[33] *Id*. at 10-11 n.47.

[34] *Am. Soda*, 428 F.3d at 925 (citing *LFC Lessors, Inc. v. Pac. Sewer Maint. Corp*., 739 F.2d 4, 6 (1st Cir. 1984); *City of New York v. Pullman Inc*., 477 F.Supp. 438, 442 (S.D.N.Y.1979)).

[35] *Id*. at 924 (emphasis added).

[36] *Id*. at 926.

[37] 973 F.2d 507 (6th Cir.1992).

[38] 428 F.3d at 925 n.2 (citing *Basicomputer Corp*., 973 F.2d at 510 (emphasis in *American Soda*)).

*Soda*, a clause referring to courts *"of"* a state is a reference to sovereignty, while a clause referring to courts "in" a state (or by extension, a county) is a geographic reference. *American Soda* referred to cases "interpreting language other than 'courts of the State,' including *Basicomputer Corp*.[39] Those cases support Tyrrel's view of the language in the Agreement forum selection clause. *American Soda* and these cases differentiate the geographic preposition "in," from the possessive preposition "of," which implies sovereignty. Under the *American Soda* analysis, the *Excell* clause ("[j]urisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado") is clearly geographical. *Excell* would not have been remanded to state court under the *American Soda* analysis.

The plain language of the provision at issue here places jurisdiction and venue "*in* Washington County, State of Utah,"[40] which is a geographical specification, rather than identification of a particular sovereign. In addition, the Agreement states that jurisdiction and venue "shall *reside"* in Washington County. "Reside" is a geographical term. Because this federal court sits within Washington County, venue is proper in this court as well as in state courts in Washington County. Maskcara's request to dismiss this action based on the forum-selection clause is accordingly DENIED.

---

[39] *Id*. at 926 n.3 (citing *Basicomputer Corp*., 973 F.2d at 510 (holding that "courts *in* the State of Ohio" could include the federal district court) (emphasis added); *Regis Assocs. v. Rank Hotels (Mgmt.) Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990) (holding that "Michigan Courts" could include federal courts); *Carrano v. Harborside Healthcare Corp.*, 199 F.R.D. 459, 462 (D. Conn.2001) (holding that the phrase "litigation ... shall be brought in Pinellas county" could mean state or federal court in Pinellas County); *City of New York v. Pullman Inc.*, 477 F.Supp. 438, 443 (S.D.N.Y.1979) (holding that the phrase "New York courts" could include state and federal courts in New York)) (parenthetical summaries in *American Soda*).

[40] Agreement, *supra* note 6, at MB00008 (emphasis added).

## II. The Motion to Stay Pending Arbitration is Denied

Alternatively, Maskcara asks that this action be stayed pending arbitration. As Maskcara notes, (1) the parties agreed to arbitrate "any controversy or claim arising out of or relating to the Agreement, or the breach thereof,"[41] and (2) this action involves only claims "arising out of or relating to the Agreement."[42] Maskcara invokes the Federal Arbitration Act and related case law to support its position that the broad arbitration provision in the Agreement is binding,[43] and that this action should be stayed pending the parties' arbitration proceedings.[44]

In response, Tyrrel does not dispute the validity or scope of the parties' agreement to arbitrate, but argues that she cannot be compelled to arbitrate here for two reasons: (1) mediation within 60 days of the mediator's appointment is a condition precedent to arbitration that has not been satisfied here, and (2) equitable considerations demonstrate that Maskcara has waived the right to arbitration. It is only necessary to consider the first of these arguments.

---

[41] *Id*. at MB00007 (generally providing for the arbitration of "any controversy or claim arising out of or relating to the Agreement, or the breach thereof").

[42] Notes 9 and 10, *supra*, and accompanying text.

[43] 9 U.S.C.A. § 2 (providing in part that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

[44] *Id*. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."); *id*. § 4 (providing in part as follows: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."). "Section 3 of the FAA obliges courts to stay litigation on matters the parties have agreed to arbitrate so long as the applicant for the stay is not in default in proceeding with arbitration, while § 4 authorizes a court that otherwise has subject matter jurisdiction to compel arbitration." *BOSC, Inc. v. Bd. of Cty. Commissioners of Cty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017) (citations omitted). Notably, in connection with Tyrrel's waiver argument discussed below, the term "'default' in § 3 includes 'waiver.'" *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1296 (10th Cir. 2015) (citation omitted).

## Mediation Within 60 Days of the Mediator's Appointment
## Is an Unsatisfied Condition Precedent to Arbitration.

The parties dispute whether good-faith mediation within 60 days of the mediator's appointment is a condition precedent to arbitration under the Agreement.[45] In support of her position that this precondition was not met, Tyrrel references Maskcara's "deliberate[] delay[s]" in her efforts to engage in mediation,[46] and Mr. Holbrook's observation that Maskcara had apparently "waived a condition precedent to arbitration . . . ."[47] She argues that, because this precondition was not satisfied, "[Tyrrel] cannot now be compelled to arbitration."[48]

On the other hand, Maskcara emphasizes the Agreement's statement that the "arbitration provision applies to claims that were not successfully resolved through the foregoing mediation process."[49] Because none of the claims here were resolved by mediation, Maskcara asserts that

---

[45] To support her side of this argument, Tyrrel cites and emphasizes excerpts of the Agreement's dispute resolution provisions as follows:

> **Dispute Resolution.** For claims seeking $10,000.00 or more that arise from or relate to the Agreement, prior to filing as set forth below, the parties shall meet in good faith and attempt to resolve such dispute through confidential non-binding mediation. One individual who is mutually acceptable to the parties shall be appointed as mediator. If the Parties cannot agree on a mediator, the complaining party shall request a mediator be appointed by the American Arbitration Association ("AAA"). ***The mediation shall occur within 60 days from the date on which the mediator is appointed***. . . . . Mediation shall be held in Utah and shall last no more than two business days.
>
> Except as otherwise provided in the Agreement, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled through confidential arbitration. The Parties waive rights to trial by jury or to any court. ***This arbitration provision applies to claims that were not successfully resolved through the foregoing mediation process*** as well as claims for less than $10,000.00 not subject to the mediation requirement.

Agreement, *supra* note 6, at MB00007; Opposition, *supra* note 1, at 12-13 (altering emphasis).

[46] Opposition, *supra* note 1, at 13.

[47] Wilde Declaration, *supra* note 1, Exhibit CC.

[48] Opposition, *supra* note 1, at 14.

[49] Agreement, *supra* note 6, at MB00007.

"Plaintiff's next step was arbitration,"[50] as Mr. Holbrook suggested in the same email cited by Tyrrel.[51]

Neither side has cited any authority to support its position, but Tyrrel is correct. The Dispute Resolution provisions in the Agreement are mandatory:

> . . . the parties **shall** meet in good faith and attempt to resolve such dispute through confidential non-binding mediation. . . . The mediation **shall** occur within 60 days from the date on which the mediator is appointed.
> . . . any controversy or claim arising out of or relating to the Agreement, or the breach thereof, **shall** be settled through confidential arbitration.[52]

Mandatory provisions like these have been held to impose mediation as a condition precedent to arbitration, meaning that the right to arbitration does not arise until the condition has been satisfied.[53] The arbitration and mediation provisions are not severable but part of an integral

---

[50] Reply, *supra* note 1, at 8.

[51] Wilde Declaration, *supra* note 1, Exhibit CC (stating in part: "Ms. Tyrrel now can proceed to file a Demand for Arbitration with the Association and proceed to arbitration.").

[52] Agreement, *supra* note 6, at MB00007 (emphasis added).

[53] *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1289-91 & 1291 n.3 (11th Cir. 2002) (per curiam) (where contract provided, in part, that disputes "shall be mediated within fifteen (15) days after receipt of notice by either party that the other party requests the mediation of a dispute," and that "[i]n the event that the dispute cannot be settled through mediation, the parties shall submit the matter to arbitration within ten (10) days after receipt of notice by either party," court held that mediation was a condition precedent to arbitration, and where that condition was not satisfied because neither side had "requested mediation, the arbitration provision ha[d] not been activated and the FAA d[id] not apply"; court further held that it was unnecessary to decide "whether [the defendant] waived its right to arbitrate since [court] [had] found that it did not fulfill the conditions precedent to trigger arbitration under the [a]greement"). While the Seventh Circuit reached a contrary conclusion on a similar issue, that decision was based in part on state law that is inapplicable here. *Welborn Clinic v. MedQuist, Inc*., 301 F.3d 634, 637-39 (7th Cir. 2002) (holding, based on federal presumption supporting arbitration, and on Indiana law, that contract requirement of, among other things, good-faith negotiation of disputes was not condition precedent to arbitration; court noted that "the purpose of [the provision] is undoubtedly to encourage successful negotiations so that neither litigation nor arbitration will be necessary, not to prefer the courts to an arbitrator if informal discussions break down"). More recently, other federal appellate courts have declined to resolve such disputes on the ground that certain Supreme Court cases indicate that "arbitrators—not courts—must decide whether a condition precedent to arbitrability has been fulfilled." *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc*., 807 F.3d 553, 565 & n.14 (4th Cir. 2015) (citations omitted); *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc*., 638 F.3d 367, 383 (1st Cir. 2011) ("The parties disagree over whether the Arbitration Clause in fact establishes a condition precedent to arbitration requiring that the parties engage in good faith negotiations. Nevertheless, we do not have to resolve this disagreement because, assuming arguendo that the Arbitration Clause establishes such a pre-condition to arbitration, Appellants have not rebutted the presumption that the arbitrator should decide whether the parties complied with such a procedural pre-requisite to arbitration.") (citation omitted). This issue has not been raised or addressed by the

dispute resolution process. Because the condition of completion of mediation within 60 days of the mediator's appointment has not been satisfied, Maskcara has no enforceable right to arbitrate the parties' dispute unless that failure is excused. Because Maskcara has articulated no theory to excuse satisfaction of the precondition,[54] its request to compel arbitration and stay these proceedings is DENIED.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the Motion to Dismiss or, in the Alternative, to Stay and Compel Arbitration Under the Federal Arbitration Act,[55] is DENIED.

Signed January 30, 2020.

BY THE COURT:

David Nuffer
United States District Judge

---

parties, and in any event the FAA requires the court to decide waiver issues. *Pre-Paid Legal Servs.*, 786 F.3d at 1296. There is a close relationship between Tyrrel's condition precedent argument and her waiver argument. If the completion of mediation within 60 days of the mediator's appointment is a condition precedent to arbitration, then the failure to satisfy this condition is conduct "inconsistent with the right to arbitrate." *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 772 (10th Cir. 2010) (citation omitted). Given this close relationship, the condition precedent argument is considered here.

[54] Maskcara maintains that "nothing in the Agreement prevented the parties from extending the deadline for mediation," Reply, *supra* note 1, at 5, but it has presented nothing showing that the parties agreed to extend the deadline beyond October 22, 2019. Given Tyrrel's consistent statements regarding her interest in a speedy mediation, Wilde Declaration, *supra* note 1, Exhibits A, B, C, and her objections to Maskcara's alleged "stonewall[ing]" and delay, *id*., Exhibits P & Y, this is not a case in which the party objecting to the nonsatisfaction of the condition lulled the other side into a false sense of security that the time limitation (which had been extended by agreement to a specific date and not indefinitely) would not be enforced.

[55] Docket no. 8, filed November 20, 2019.